KLA. Mr. Garson, please proceed. May it please the Court. Ross Garson for Zitronix. We are here today, Your Honors, to discuss the merits of the Court's error in granting the summary judgment on the basis that the evidence, when viewed in the light most favorable to the plaintiff, failed to establish the materiality prong for an equitable conduct underlying the Walker Process Antitrust Claim. Your Honor, when facts are viewed in the light most favorable to my client, there was material information withheld from the Patent Office that caused one or more claims to wrongfully issue, as well as materially false information. What information was withheld? What's not disclosed, Your Honor, was the status of the appeal. That was never disclosed. What makes a difference? Your Honor, it actually is because of an opinion, in fact, of the Blounderton decision. The Patent Office, the Court erred by applying the Fifth Circuit rules for collateral estoppel instead of the Patent Office, the Federal Circuit's rule. And the Federal Circuit has a rule that, in fact, was articulated quite well by Judge Mayer in the Ethicon case, which basically says as follows. While when a district court case of invalidity is pending on appeal, it is non-binding on the Patent Office. It doesn't have to be followed. On the other hand, after the appeals have been confirmed by this court, then it becomes binding. The district court case of invalidity becomes binding, very binary. It is non-binding during pendency of the appeal. It becomes binding after the appeal is exhausted. That's why, for example, Judge Mayer in Ethicon said re-examinations continue going on even after a district court has found claims to be invalid. But the Patent Office can figure out the status of appeal itself. They had notice of the underlying district court decision, right? That is correct, Your Honor. But Rule 2001.06 puts the burden on the patentee to apprise them of what was taking place. They failed to do so. And while it's true the examiner could have found it, in this case... I'm sorry, what is Rule 2001.06? .06. That's where, I apologize, Your Honor, that's the rule that says during any information relevant to... What rule? What is this? MPEP. So it's not binding on anybody? No, it's the guidelines... It is a rule that isn't binding on this court or anyone else. So I don't have to construct a rule of law regarding notice and have that reflective of fraudulent intent simply because there's some MPEP thing that says people should update the Patent Office. Your Honor, yes, it is a guideline. That is correct. But it is an obligation to follow the guidelines. And that's one of the things that they're supposed to provide to the examiner. It's not the examiner's obligation to go seek out and find something. And in this case, Your Honor... Well, I don't understand what you wanted them to provide. They didn't file a notice of appeal. So did you want them to hand a blank document over to the PTO? There was no document for them to turn over. There was nothing to be listed on the IDS. There is no way to note no appeal filed. There isn't a document. So what is it they were supposed to turn over? They can inform the examiner that the appeal had been waived because the examiner didn't know that the appeal had been waived. Why did they have to inform the examiner that the appeal had been waived? Because it's the difference between the examiner understanding it's a binding opinion and a non-binding opinion. And what happened here is the examiner didn't understand it was a binding opinion and he couldn't do his job correctly. Why do you assume the examiner didn't understand it was a binding opinion? Well, looking at the facts and the like most favorable to my client, what occurred was the opinion was provided to the examiner and the examiner didn't follow it. And the question is how can the examiner do his job properly? Well, so you argued, if I'm not mistaken, that you think the PTO didn't do its job properly. That's the real crux of the issue. And you may be right. I mean, in the course of prosecution, we all know how few hours a patent examiner has to spend on any given reference. And sometimes an IDS can have 50, 100, or 300 pieces of prior art listed on it and the examiner initials all of them, yet he spent 18 hours reviewing the entire application. But that's not the case here. How many items were listed on the IDS in this case? On the IDS in which they disclosed this order, the judgment of January 31st, there were five items that were disclosed. Five items? That is correct, Your Honor. Five items? Yes. And the examiner initialed each of those five? Yes. And you think that he nonetheless failed to do his job properly? That's what you allege in your brief? I'm saying the examiner was not provided the information for him to do his job properly. What are you talking about? He was given the district court opinion. Well, but we know he wasn't provided that information that the appeal was binding. And we believe, when you look at it, that he allowed a claim, Claim 5, to issue that had indefinite language in it. He allowed claims that were not materially distinct at all to issue. And the question is, why did the examiner do that? Well, he obviously didn't think they were indefinite. But the point is, and that's correct, Your Honor. But the point is, he revisited the issue, which he's not allowed to do for collateral estoppel. So he got it wrong. He may have legally erred. If you had challenged the patent in some other forum, if it hadn't already been disclaimed, you would have probably gotten it invalidated too. But I don't see how legal error, based upon knowledge by the examiner of the facts, rises to a law court process violation. Okay. The issue today, of course, is just materiality. But you're right. I understand, Your Honor. But the question is whether there was fraud perpetrated on the Patent Office. And the issue is, I don't see how there can be fraud when the Patent Office was given the decision you're claiming invalidates this patent. Well, Your Honor, the examiner either ignored it, thought it not binding, just blew it all together. None of those are law court process violations. Well, and I respectfully, Your Honor, if he believed it to be nonbinding because he wasn't given the information to tell him it was binding, then I believe that there is material information withheld. But there's no suggestion of that whatsoever. And there's no, I mean, you can cite the NPEP rule all you want. But the examiner should know that a district court decision is subject to appeal. And if it's not appealed, then it's binding. But I don't see how we have to impose an affirmative rule on the other side to provide this kind of information. If we impose affirmative rules on every obligation in the NPEP, then we're going to create a lot of law out there that is going to give rise to a lot of claims of misrepresentation to the Patent Office. That can't be what Walker process was intended to go after. It was intended to go after affirmative misrepresentation. Well, Your Honor, with regard to the affirmative misrepresentations, they made statements that were squarely contrary to the binding opinion. When they put in the language that was indefinite into the claim, they actually put it in to, quote, overcome a 112 issue. Now, while the Patent Office, whether the examiner didn't know that was true or not, whether it was binding, making a statement on the record that this language I've now put into the claim, the attorney puts in there, that this overcomes a 112 rejection when he's putting in language that as a matter of law has been found to be indefinite is not true. Sure. I mean, some of those other statements they made to the examiner kind of push up against the line for me. But the real problem is I don't see how you show that this is a but-for cause because they were given the district court's decision and the patent examiner should have been aware of the reasoning there. I understand, Your Honor. So those other misrepresentations don't seem to matter to me. But the reality of it is it was a binding decision on the Patent Office because the appeals have been waived. Again, I mean, what Judge Hughes is saying is, and I agree with him, is where is the but-for causation? You have a district court opinion that was handed to the examiner on an IDS with only five items. So it's not like he lost it. It's just five items, and it's a district court opinion, and it says maximize is indefinite. OK? And then you have an attorney who on appendixes page 455 and 456 makes some statements that  how is there a but-for causation when the examiner had the opinion with its detailed rationale in his hands? He either didn't read it, but that's not on them, or he read it but thought it wasn't right and went a different way. How is that but-for causation? The statements, I will tell you, you have no chance of getting me to conclude that they have to notify the Patent Office that they decided to waive an appeal, that you don't have a shot on that. OK. So then the question is, what do I do about the statements? Sure. I do think some of the statements that were made, I certainly don't like them, would not have made them, and I find that troubling. But I don't see the but-for causation when these are just attorney arguments and when the examiner has the detailed opinion with the thorough reasoning in it that goes exactly the other way. Your Honor, I believe that there is a Rule 11 equivalent. To be clear, I was only speaking for myself. So when I said you don't have me, you don't have me. But maybe you have one of them. I don't know. I don't want to speak for my colleagues, and I don't want you to think I speak on behalf of the court. I'm just telling you exactly where I stand. Yes. Your Honor, there's a Rule 11 equivalent in the Patent Office, same as Rule 11, that when you make statements to the Patent Office, you have to have a basis to make those statements. The lawyer- Maybe they can bring some sort of Office of Disciplinary whatever against this guy then. But I don't see why that becomes Walker process fraud. Well, Your Honor, our point is- There's a difference between Walker process fraud and attorney misstatements that may come close to the line such that the attorney could be subject to discipline. And Your Honor, the but-for causality, if they had told the truth, if they had told them that these arguments, they were making arguments that they were stopped from making, and they had made those arguments- At the time they made the arguments, at the time the exact- So the main part of the appendix that you cite is 455 and 456, where the attorney arguments are made. Just so I understand the chronology, were those arguments made prior to or after the time for appeal had expired? The appeal had expired in March or April of 2011, and those statements were made in 13 and 14. So they were made well after. And during his deposition, the lawyer admitted he had no basis. But if the statements were made well after, wouldn't the examiner have known that as well? I mean, wouldn't the PTO know that? I mean, if you're handing them a district court decision from 2010, when was it from? 2011. 2011. You're handing them a district court decision from 2011. I don't know. I mean, I understand examiners aren't lawyers. But when statements are made in 2013 or 2014, you know, certainly the time for appeal had long since expired. Yes. So either there was a pending appeal or already decided appeal? Again, appeals last long. Your Honor, this case has been on appeal for almost three years. It could still have been on appeal. That's not my fault. No, I understand. Thank you, Your Honor. Before you sit down, let me ask you. If you say this case has been going on forever, there was no enforcement before. Has there been any enforcement of the patent since or attempted enforcement since the last time we've heard this case? I mean, if you're asking me if there's been any lawsuits brought on the patent, no, they have not. If you're asking me whether or not positions have been taken that these patents still contain valid claims, yes. And have they been said that they could go against what my client is doing? Yes, those statements have been made in the context of this litigation, Your Honor. So you're still under threat of potential infringement? Absolutely. We believe that there is a that claims six or seven. One of those two would cover what could be colorably cover what we're doing. Yes. Mr. Fountain. Thank you, Your Honor. May it please the court. I guess I'd like to start with the final question posed by the panel as to ongoing enforcement. The allegedly fraudulently obtained claims, claims one, five, and I believe some of the later claims, were all disclaimed very early in the district court case, right? So to the extent there has been a statement that maybe claim six or claim seven, which is still in force, might be asserted. There's no allegation that any of those claims were obtained by fraud on the patent. Those aren't the claims that are subject to the Walker process suit. That's correct, Your Honor. And that's never been alleged. But isn't it true that at least for inequitable conduct, if an inequitable conduct occurred in the prosecution of any single claim, it can be found to have tainted the entire patent, even the claims for which it doesn't apply. That's true, Your Honor. So is there any possibility that that argument could allow or carry over into an analysis of Walker process fraud? Because you're looking at statements made with regard to the patent, even if this particular claim being asserted doesn't have that limitation, you still have a patent that would be rendered unenforceable by virtue of our precedent. As to unenforceability, Your Honor, that's correct. As to the link between enforcing fraudulently obtained claims and the claims that remain, certainly I've seen nothing to suggest that. But I guess what I just said to you is, it's my understanding that our inequitable conduct precedent renders an entire patent unenforceable. I've never seen a case ever where unenforceability was as only two particular claims in the patent. So it seems to me that it doesn't matter if you are attempting to enforce an unenforceable patent because that entire patent is rendered unenforceable by virtue of inequitable conduct. I don't see what difference it makes that the misstatements were with regard to Claim 1 and 5 as opposed to 6 and 7. Understood, Your Honor. At least as of the last time the district court spoke on this issue, the parties were in agreement that no affirmative act with respect to the 260 patent at all had ever been taken by KLA. That came up in the issue of our motion to dismiss for lack of enforcement, and that's covered in our brief. Turning to the issue of causation, I'd like to start with the status of the appeal. The idea that the failure to appeal had any legal relevance here is incorrect. Both this court and the Fifth Circuit have held that a final judgment is binding on the litigant to the extent it is binding as of its entry, and the pendency or failure to take an appeal does not affect that at all. Therefore, the failure to disclose the lack of an appeal cannot affect or cannot give rise to fraud as a matter of law. Well, if the Federal Circuit had affirmed the district court judgment, do you feel you would have had an obligation to report that to the PTO? I believe, yes, Your Honor, that if there had been further litigation developments, those would need to be reported to the Patent Office. If you had filed a notice of appeal at the Federal Circuit, do you feel you would have an obligation to inform the PTO of the fact that a notice of appeal had been filed since you had, in fact, submitted the district court judgment to them? Do you believe that the rules in front of the agency would have required you to inform them of the notice of appeal? That's an interesting question, Your Honor, in that perhaps the answer is yes, but as to whether the failure to comply with that obligation could give rise to fraud in this context, I would say absolutely not. The reason why is the issue of taking an appeal or not has been presented by Zitronix as affecting the finality of the judgment. That's the issue where this Court and the Fifth Circuit have already spoken. The judgment was final when entered. The 441 patent, when it was invalidated in the first case, was thereafter invalid for all purposes. I'm just trying to explore the extent to which the law ought to exist on this point with regard to what has to be given to the agency if there is an appeal versus not an appeal. I understand your argument, but I guess what I was thinking is if you had appealed, for example, and you filed a brief that was relevant to this exact claim term, maximize, it would be subject matter directly on point. It likely would have arguments that could either affirm or contradict the arguments you'd be making before the agency on the exact same term in a related patent. I would think that there are probably certain obligations of disclosure if there actually is an appeal. I don't know what the obligations are if there's no appeal, but I guess what I'm a little nervous about is a rule of law that says you have no obligation to report anything related to an appeal so long as you turned over the district court. Do you understand? I'm just trying to find the line. I do understand your Honor's efforts to find the line, and I would submit that those facts are simply not present in this case. The only thing that we do know is that everything that could have been disclosed to the Patent Office that could arguably be of any legal relevance to the validity of the 260 patent claims was in fact disclosed. As to a broader rule about what a practitioner ought to submit if an appeal goes forward, I think that would be an advisory opinion from the court, but it does seem that erring on the side of disclosure would be consistent with the policy concerns articulated by this court in prior cases. What about the arguments made by Mr. Stallman on pages 455 and 456? They certainly seem to me to be directly contrary to the district court's legal conclusions on indefiniteness in the case, this district court decision. I understand your Honor. The primary issue with looking to the statements about indefiniteness with respect to the fraud claim brought by Zitronix is causation. This statement is in response to an action that the examiner took, a suggestion that the examiner made in the very office action the examiner issued after reviewing the judgment. The examiner rejected the claims and said optimize was going to be indefinite and that for prosecution, the examiner would treat the claims as if they said maximize. In that situation, Mr. Stallman responded, I'm following the examiner's suggestion to change these claims to say maximize instead of optimize. So I know, but okay, so you think the examiner read that 4-4-1 opinion when he made that suggestion? He already had the 4-4-1 opinion. So do you think he read that 4-4-1 opinion when he said change the word optimize to maximize and you will no longer be indefinite? Certainly the law presumes that he did. I don't have any additional information to suggest one way or the other. What I do know is that if you go back and look at the final judgment order issued by Judge Sparks, he was very focused on the word substantially, not on the word optimize versus maximize, which is where the examiner took issue with the claims as pending. So substantially was there before. Mr. Stallman submits the final judgment order where Judge Sparks took issue with substantially and the examiner responds by focusing on that second word, optimize versus maximize. Whether the examiner read the order and should have done what the examiner did is not the issue. The issue is whether Mr. Stallman did anything that was fraudulent. And here, I just don't see how there could be any causation when this language was not of Stallman's own suggestion during the prosecution at this point. This was the examiner's idea. But he ran with it. Well, he did, Your Honor, and this court has said repeatedly that there's no duty to be an advocate against patentability, right? Not running with it at this point would be, look, I gave you Judge Sparks' order. You appear to be making a suggestion that, to me, seems inconsistent with Judge Sparks' order. You know, don't you really mean I should be doing this, right? And there's no obligation for Mr. Stallman to do the examiner's job for him. And as to the potential inconsistency between what the examiner has suggested by subbing maximize for optimize here, you know, I do think it's important to note that there is a gray area, well, actually, I would say it's stronger than that, right? This court has held in transcourt that on issues of claim construction, the PTO is not bound by collateral estoppel from what happened in an earlier district court case. And certainly at the time these claims were pending, indefinite mis- Time out. That's because they use an entirely different standard. Those cases say because the PTO is adopting the broadest reasonable construction standard as opposed to the Phillips standard. That argument has no place in this case. This is not a different standard. I think there's a second component to those cases, Your Honor, and that is the Supreme Court has said that non-mutual collateral estoppel cannot be applied against the U.S. government. That was a point that Judge Dyke pointed out in the transcourt case. And so the idea that in the first case on the 441 patent, the examiner was bound as a matter of law in the prosecution of the 260 patent, I think would go against what the Supreme Court has said about the ability to bind the federal government based on a district court case to which it was not a party. More broadly, my co-counsel pointed out collateral estoppel, the binding nature of the appeal in the first case. That argument is waived. The argument of issue preclusion or collateral estoppel was never presented to the district court below. The only argument that could be similar that was made below was the law of the case. It was pled in the complaint. It was identified in response to the summary judgment motion. But the law of the case refers to what happens in the same case. In their opening brief, there was no presentation of collateral estoppel. And there are a number of elements to that doctrine that have to be met before it could be applied. None of that has been addressed in this record because it's an argument that it was not presented until the very first time in the reply brief. Mr. Stallman may not have, his statements may not rise to the level of Walker process fraud, but I'd have grounded my children for something like this, just so you know. I don't think it's okay to allow the examiner any more than it would be to allow a parent to assume the wrong course of action knowingly when the child knows that the parent doesn't seem to appreciate the facts, even if they were told the facts. And trust me, sometimes my kids tell me things that I don't listen. So I don't hear them. I don't hear it. I don't internalize it. I don't necessarily listen to what they're saying. And then they tell me something else. My children are smart enough not to think that that gives them a free pass to do something that they know I would think is wrong if it were brought to my attention. And I think what Mr. Stallman did here is smarmy. I think that he allowed, and I think it was to his clients detriment, to be clear, because here we are may not rise to the level of fraud, but it wasn't the way that I would hope to see attorneys engage with forums that they appear in front of with regularity because it makes them less trustworthy. I appreciate that, Your Honor. Again, I will submit that the causation prong of the Walker Process Fraud case cannot be met here because looking at- Because the PTO didn't do its job. Sure. And there are, if the court is of that opinion, there are any number of ways to address that. Re-exam, inter partes review, a declaratory judgment of invalidity, none of which were done here, and none of which involve accusing Mr. Stallman of lying to the federal government. Well, I don't think, I don't know if I could say he lied to them. I think I could know he allowed them to walk the wrong path knowingly. And maybe that's not the standard for Walker Process Fraud because that's a really high standard. It's not, Your Honor. And if you go back and look at Mr. Stallman's deposition testimony on this question with respect to his statements about the prior art, he talked about the differences between the claims of the 260 patent and the invalidated 441 patent. On this issue, he testified sometimes the examiners disagree with the district courts. You know, the idea that Mr. Stallman knew that what he was doing- But he already knew the examiner wasn't free to disagree with the district courts because they hadn't appealed this issue. So Mr. Stallman was already well aware of that fact. So the PTO no longer had the discretion to disagree with the district courts. The PTO has the discretion just like two district courts have the discretion to disagree with each other. With respect to the 441 patent, I agree that that's absolutely correct. With respect to the 260 patent, I don't know that that is correct, Your Honor, for the precise difference that the claims do. They may present different issues of patentability, which would be at least one of the requirements under this court's Ohio Willowood decision. But again, if you look at that- Going back to the beginning of your argument, your opponent said that you are threatening litigation or threatening enforcement. How do you respond to that? I'm aware of no such threats, Your Honor. There's nothing in the record. I've heard that within the context of this litigation. Again, Your Honor, I'm- I can't remember what he said. I'm aware of no such thing. I'm not sure what Mr. Garson is referring to. I've had no conversations with Zeitronics about this. It's certainly the case that there are some claims of the 260 patent that were not disclaimed, and I'm aware of nothing to suggest that an affirmative act with respect to either the disclaimed claims or the remaining claims has ever been taken. If there are no further questions. Thank you. We have a little bit of rebuttal time. Mr. Garson. Thank you, Your Honor. I know I'm not- You stated that I'm not going to convince you that they had an obligation to I believe when you were talking to opposing counsel, that you said that you weren't sure that this raised the level of fraud. This is a summary judgment motion. Facts are supposed to be viewed in the light most favorable to us. And what's clear is that there was- That's not a factual conclusion. That's a legal conclusion about what legal obligation we're going to put on them. The facts here largely aren't disputed about what happened. It's just the inferences that we can draw from those facts. And again, the question also is, he knew. I mean, looking at the facts, the lawyer, there was something going wrong here. And the facts looked at it. The lawyer was taking advantage of what was taking place. He was putting words into the patent that under the Nautilus Supreme Court opinion, as a matter of law, same specification, same effective filing date, they had to remain indefinite. Put it in there. The question comes up is when you know that the examiner isn't following it. And again, I submit that he needed to tell the patent office that this was a binding opinion, that the examiner wasn't getting that information. But did he have a duty then because he was doing this? Let's assume the examiner knew this was a binding opinion. Okay. Then what else do they have to do? Well, the answer there is, then if it's a binding opinion, the examiner knew it, presumably then the examiner would do his job correctly. He had already indicated that the claims- Don't make that presumption. The only fact that changes here is the examiner knows that the district court opinion is binding, but still goes ahead and issues the patent. Okay, okay. Is there a Walker process violation there? I believe that there still is, Your Honor, because I believe that the statements that were made by the lawyer went past legal argument. They became overzealous. They were making false statements. And the examiner believed that. I don't see that. I don't see him making false statements. I think there's a difference between not correcting someone else's misunderstanding and making affirmative false statements. I've carefully read this entire record. I don't see Mr- I'm going to be very clear. I don't see Mr. Stallman as having made any false statements of any kind. I see him allowing the examiner to take actions that I wouldn't have done and you wouldn't think a prudent attorney would do. For goodness sakes, I'd have said, hey, examiner, how about we steer clear of maximize? How about we pick this other word? Some synonym of maximize so it's not an all fours. Why Mr. Stallman did that, didn't do that, I'll never know. It would have been more clever by half. But I don't see him as having made any affirmative false statements. Can I ask you, though, to address Judge Mayer's point? You said when you stood up that your client still existed under the threat of potential enforcement actions involving the non-disclaimed portions of the 260 patent. What basis do you have for believing that? Yes, Your Honor, I mean, first, you have to look at the totality of the circumstances. The original case was a DGA action brought by my client because they had asserted the patent family, this patent hadn't existed at the time, against my client. There's no dispute that the lawyer testified the purpose of the 260 patent was specifically directed at going after my client. That was the purpose of it. They, in fact, were trying to broaden the claims in case they lost the first case to go after my client with this patent. That is what it was done for. They've taken depositions of my client and asked questions about it, asking him his belief whether or not under Claim 6 or 7, whether or not it falls within the scope of Claim 6 or 7. These are questions asked to my client, and they have represented to my client that they believe that Claim 6 and 7 are still enforceable claims that they could enforce against anyone, including my client. I believe, Your Honor, while, again, those statements were made in the context of litigation, that's my understanding is what was said to my client in deposition. That's why my client has a reasonable apprehension. Okay. Thank both counsels for your argument. The case is taken under submission. Thank you, Your Honor. All rise.